IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ALEXANDRA SHIPULA, Individually §
and ALEXANDRA SHIPULA A/N/F of §
D.S., Minor Children, §
                              §
           Plaintiffs, §
                              §
VS.                             §    CIVIL ACTION H-10-3688
                              §
TEXAS DEPARTMENT OF FAMILY §
PROTECTIVE SERVICES, et al., §
                              §
           Defendants. §

**OPINION AND ORDER OF DISMISSAL**

Pending before the Court in the above referenced case, *inter alia* challenging, as a violation of *pro se* Plaintiff Alexandra Choppily's rights to familial association with her minor children, D.S. and E.S., under both the Federal and Texas Constitutions and the Texas Family Code, Defendants' actions and rulings in a state court action brought by *pro se* Plaintiff's husband, Defendant Steve Choppily, and alleging unconstitutional interference with her custodial rights as a parent, are the following motions:

1. Defendants State of Texas, Texas Department of Family
and Protective Services ("TDFPS" or "the Department"),
and CPS Defendants'[1] motion to dismiss (instrument #8);

---

[1] CPS (Child Protective Services) is a division of TDFPS charged with investigating reports of and providing services to abused and neglected children. 40 Tex. Admin. Code Ann. § 107.1605(b)(1)(B)(i).

2. Defendants the State of Texas,[2] Texas Department of
Family Protective Services,[3] Rebecca Cunio,[4] Orlando
Velez, Chrystal Reid-Sophus, Ieshia Webb,[5] Deanna Lowery-

---

[2] The complaint alleges that State of Texas Attorney General Greg Abbott is involved in the "supervision and/or investigation of plaintiff's complaints of her children's removal and placement. STATE OF [*sic*] Texas is sued in its official capacity." #1 at 25.

[3] The complaint asserts that CPS/DFPS "was not out to protect the children as CPS claims, instead their real agenda . . . is to maintain the tap on the Federal Funding Stream created by CAPTA and other Title IV provisions, and as a bonus, selectively prosecute parents who had made an enemy somewhere in the State for trivial or retaliatory reasons." #1 at 26.

[4] Plaintiff alleges that CPS Investigator Rebecca A. Cunio "acted outside the scope of her employment when she misdirected the investigation on the Father to a biased, prejudicial and irrelevant full investigation on the Mother, concealing exculpatory evidence and evaluations, in order to misdirect this case to achieve the seizure of my children based on false allegations which she knew to be false."  She also purportedly "made false statements, and concealed collateral statements, and exculpatory evidence and my treating Psychiatrist evaluations of Plaintiff," "as well as all evidence that the children were well-cared for . . . to effect the emergency removal of my very young children."  #1 at 21-22.

[5] Ieshia Webb, Harris County DPS FBSS (Family Based Services) Caseworker, allegedly "misdirected the investigation of the Father to a biased, prejudicial, and irrelevant full investigation of the Mother, concealing exculpatory evidence and evaluations, in order to misdirect this case to achieve the seizure of my children based on False Allegations which she knew to be false. [*sic*]" #1 at 24.
The complaint alleges generally against Webb, "under the direct supervision of Chrystal Reid Sophus and Diana L. Sutton, Deanna Lowery-Green, Tara Grace, Leshia Fisher, Wanda Smith, Elizabeth Payte, Scharlene Overstreet, and David K. Walker, and Montgomery County District Attorney Brent Lignon" that they "did not investigate the criminal actions of collusion and conspiracy to defraud the Court and mislead the Criminal Investigation into whether Steven Shipula and his girlfriends . . . had sexual contact with DS and ES and had committed aggravated sexual assault on the mother." #1 at 42.  Sutton, Webb, Reid, Love, Steve Shipula, Lowery-Green, and Grace "made malicious accusations against

Green,[6] Tara Grace,[7] Leisha Fisher, Brian Bartko,[8] Scott Dixon,[9] Jose Martinez, Katie Olse,[10] John Landis, Tonnis Hilliard,[11] Diana Sutton,[12] Vanessa Gistand,[13] Ivy

---

Plaintiff's mental health, and they concealed evidence . . . ."

[6] The complaint alleges that Deanna Lowery-Green, Montgomery County CPS Caseworker, "placed the children with their Father, whom they had had no relationship with for the previous 4 years, against consideration of his CPS History."  Moreover she "misused her position to intentionally commit fraud upon the COURT by making false statements under oath regarding critical facts of this case." #1 at 25.

[7] According to the complaint, Tara R. Grace, Montgomery County CPS Supervisor, "approved the continued removal of my children from their home, placement in Foster Care and Ultimately, being placed with their Father, who had confirmed sexual abuse allegations by CPS just one year earlier. [*sic*]"  #1 at 26.

[8] Identified in Plaintiff's Complaint as Regional 6 Legal Counsel, who, with John Landis, DFPS Administrative Review for DFPS cases, who denied Plaintiff an administrative review in June 2009, "did not act to curtail the fraud/lies offered by CPS Caseworkers as the reason for the removal of the children" and did not investigate and correct the error.  #1 at 18-19.

[9] Identified in Plaintiff's Complaint as the DFPS Regional 6 Director overseeing caseworkers and supervisors who, "when informed of the inappropriate removals" of Plaintiff's minor children "personally failed and refused to act in the minor children's best interests and knowingly allowed falsehoods to be promulgated before the court, and abuse of process."  #1 at 18.

[10] Katie Olse, Director of Consumer Affairs for the DFPS/HHS is sued along with Jose Martinez, Supervisor of the Office of Consumer Affairs at the DFPS in Austin, for "not hold[ing] CPS to its purpose of removing children in immediate risk of harm" and for "rubber-stamp[ing] CPS' actions when I know they did not meet the guidelines for removal by the Texas Family Code."  #1 at 23.

[11] Plaintiff asserts that Tonnis Hilliard was the Investigator at the Children's Assessment Center, which denied that the children made sexual allegations against Steven Shipula and instead, without "corroborating factors," argued that the children were not safe with Plaintiff because of Plaintiff's mental health.  Hilliard also

Chambers,[14] Ann Heiligenstein,[15] Judge Joseph Ann Ottis,[16]

_____

"personally chose to seize both children" on December 19, 2009 and did not return them for ten days.  Hilliard also "acted without concern for the children's best interest . . . [and] without regard for the trauma of the seizure to a 6 and 3 year old children [*sic*]."  She also "ignored the guidelines written in the State of Texas Family Code for removal of children."  #1 at 21.

[12] Plaintiff alleges that Diana Sutton, Child Safety Specialist for Children's Assessment Center, "was the Supervisor who approved the continued harassment of my children and the Plaintiff when mental health professionals had told her because I said I was being stalked does not mean I am mentally ill.  She was the orchestrator of the switch from my private Psychiatrist and suppression/ignoring his opinion to their prejudiced, already determined nonsupported accusation that Plaintiff is extremely delusional.  Thus enabling DPS to traumatically seize my children:  kidnapping from their home, placement in Foster Care, and ultimately, being placed with their Father, who had confirmed sexual abuse allegation by CPS just one year previous."  #1 at 24.

[13] Orlando Velez and Vanessa Gistand, CPS Supervisors at the Children's Assessment Center on Bolsover Street "during the Investigation Phase of CPS Case #26561264 kept reauthorizing the case to be continued as active long after it should have been closed."  They also purportedly "were involved in perjury promulgated in court."  #1 at 22-23.

[14] The complaint alleges that Ivy M. Chambers, Harris County Police Representative for the Children's Assessment Center, was also "involved in the supervision and/or investigation of the criminal complaint made by the children.  Purportedly she "allowed outside influence from 3rd parties to influence her investigation and follow-through of sexual abuse allegations" and "conspired with others to shut down/close the investigation on Steve Shipula and misdirect it onto the Mother using False Statements, and suppression of exculpatory evaluations, evidence, collateral interviews and common sense."  #1 at 27.

[15] Anne Heiligenstein is identified in Plaintiff's Complaint as TDFPS Commissioner, who misused and abused the Texas Family Code "resulting in inappropriate removal of my children."  #1 at 17.

[16] Judge Ottis is identified in Plaintiff's complaint as the East Texas CPS Cluster Court Judge in Cause No. 200902554, who "continued the emergency protective order barring me from my children and my minor children from their home, and taking custody

and Senator Jane Nelson's amended opposed motion to stay

discovery (#13);

3.   Defendant Judge Ottis's motion to dismiss (#9);

4.   Defendant Senator Jane Nelson's[17] motion to dismiss

(#10);

5.   Defendant Robin D. McKinney's[18] motion to dismiss

(#14);

6.   Defendant Tom Wallace's[19] motion to dismiss (#16);

---

of children without consideration of Plaintiff's rights and
constitutionally protected interest in the companionship and
society of minor children."  #1 at 16.

[17] The complaint asserts that Senator Jane Nelson, Health and
Human Services Committee Chair for 2010, is the United States
Senator for Texas, but in the service list she is identified as a
Texas State Senator.  Plaintiff asserts that she emailed Senator
Nelson in July 2009, October 2009, and February 2010 and called her
office in Washington D.C. "to present documents that clearly
indicated my children were inappropriately removed, that they were
well cared for and Plaintiff had complied with every request made
by CPS/DFPS in Spite of the fact that no report had been made
against me that initiated this retaliatory witch hunt against me
and that CPS has been harassing me like I am their number one
priority since Feb. 2008. [*sic*]"  #1 at 26.

[18] The complaint identifies Robin McKinney of the Texas Health
and Human Services Ombudsmen's office as "the contact for another
Agency a consumer can contact when DFPS violates their own
provisions, and purposes, or when bad faith, mal-intent, abuse of
authority is involved."  She "is sued in her official capacity for
not enforcing the purpose of CPS, and allowing individuals to use
their positions to destroy innocent people's lives."  #1 at 23.

[19] Tom Wallace is identified as an Assistant Harris County
Attorney, who "took over the Show Cause Hearing" and "failed and
refused to act in the minor children's best interests and knowingly
allowed falsehoods to be promulgated before the Court."  #1 at 18.

7.   Defendant   Joseph   P.   Cannon's[20]   motion   to   dismiss
(#17);

8. Defendant Theresa Burbank's[21] motion to dismiss (#22);

9.   Defendant Theresa Burbank's motion for mor definite
statement (#23);

10.   Defendant Victor Love's[22] motion to dismiss (#24);

11.   Defendant   Victor   Love's   amended   motion   for   more
definite statement (#26);

12.   Defendant   Amy   Ngo   Lacy's[23]   motion   to   dismiss   under
Rule 12(b)(1) and 12(b)(6)(#27);

13.   Defendant Leeann Hill's[24] motion to dismiss (#48);

---

[20] Joseph Cannon is listed as Steve Shipula's attorney, #1 at
4.

[21] Plaintiff   asserts   that   Theresa   Burbank,   a   therapist
appointed for DS and ES by DPS, colluded with Elizabeth Payte,
Wanda   Smith,   Judge   Jo   Ottis,   Scharlene   Overstreet,   Leeann
(variously spelled Lee Anne, Leeanne, LeeAnn") Hill, made false
statements under oath, and on February 10, 2010, stated that "CPS's
position is that these girls don't exist."   #1 at 29.

[22] According to the complaint, Victor M. Love was the therapist
appointed   for   Plaintiff   and   Steve   Shipula   by   DFPS.     Love
purportedly colluded with Elizabeth Payte, Wanda Smith, Judge Jo
Ottis, Scharlene Overstreet, and Steve Shipula's attorney Leaanne
Hill "to maliciously and intentionally make false statements under
oath."   #1 at 28.

[23] Plaintiff alleges that her attorney, Amy N. Lacy "did not
defend me or use her legal knowledge to obtain a jury trial on my
behalf," even though Plaintiff paid her over $130,000 over a seven-
month period.   #1 at 28.

[24] The complaint states that Leeann Hill, attorney for Steve
Shipula, conspired with the other agents of the court and DFPS to
commit fraud on the court to ask that testimony in the CPS Cluster

14.  Defendant Elizabeth Payte's[25] motion to dismiss (#49);

15.  Defendant Wanda Smith's[26] motion to dismiss (#50) and motion for more definite statement (#51);

16.  *Pro se* Plaintiff Alexandra Shipula's motion to dismiss the motions to dismiss filed by the CPS Defendants, Judge John Ottis, State of Texas and TDFPS (#78);

17.  Defendants Scharlene Overstreet's[27] and David K. Walker's[28] motion to dismiss pursuant to Fed. R. Civ. P.

---

Court and County Court at Law 3 be allowed without requiring an oath.  #1 at 29.

[25] Elizabeth A. Payte was the Guardian Ad Litem, representing DS and ES, in a lawsuit by DFPS to terminate Plaintiff's and Steven Shipula's parental rights.

[26] Plaintiff claims that Wanda Smith, Montgomery County CASA Volunteer, "was involved in perjury promulgated in court."  #1 at 27.

[27] Plaintiff alleges that Scharlene Overstreet was the Assistant Montgomery County Attorney for the Texas Department of Family Protective Services in Montgomery County, Texas.  Overstreet was "involved in bias, overzealous and abusive perjury, excessive litigation promulgated in court to deprive me of my children." #1 at 19.

[28] Walker is identified in the Complaint as Montgomery County Attorney who personally authorized and manipulated the abuse of process by resetting the case and dropping Plaintiff's constitutional right to a jury trial, scheduled for a January 19, 2010 trial before Judge Jo Ottis.  He allegedly "failed to act in the minor children's best interest and knowingly allowed falsehoods to be promulgated before the court," as well as instructed her husband to file a suit in family court before CPS moved to nonsuit. #1 at 19-20.

12(b)(1) and (6)(#80);

18.   Federal Defendants'[29] motion to dismiss (#102);

19.   Defendant Steven Shipula's[30] motion to dismiss (#118); and

20.   Plaintiff's motion for summary judgment (#96).

While the complaint is rambling, disjointed, and unclear, the Court tries to summarize its key allegations.

## I.   Plaintiff's Allegations

In her "Complaint for Emergency Declaratory Judgment and Emergency Injunctive Relief" (#1), Plaintiff states that "her causes of action are:  the unconstitutional interference by the seizure, deprivation and detainment by the STATE of Texas Department of Family Protective Services (TDFPS) and individual actors acting in their official capacity to Plaintiff's minor children, D.S. 7 years old, and E.S. 4 years old, from their natural mother." *Id.* at p. 5.   She also claims "denial of

---

[29]  The complaint charges Eric Holder of the United States Attorney's office with involvement "in the supervision and/or investigation of plaintiff's complaints . . . and other complaints of wrongdoing by Child Protective Services in all States regarding of [*sic*] children's removal and placement . . . ."   It further alleges that Daniel Hu and Keith Wyatt of the United States Attorney General's office as "involved in the supervision and/or investigation of plaintiff's complaints of her children's removal and placement.   STATE OF Texas is sued in its official capacity." #1 at 25.

[30]  Steve Shipula is identified as the "noncustodial parent of DS and ES" and accused of knowingly signing a false affidavit about Plaintiff.

Plaintiff's right to substantive, and procedural Due Process in the
CPS East Texas Cluster Court in Montgomery County, Texas, and a
Jury Trial and now continuing in the Montgomery County Court Number
3, Judge Patrice McDonald. [*sic*]"   Moreover in the alleged
violations of her constitutional right to her children and her
"liberty interest in familial association," *id.* at p.6, she sues
numerous individuals and entities:

> Many causes of action, both civil and criminal, exist by
> actions of State employees and individuals acting as
> Agents for the Texas Department of Family Protective
> Services (DFPS), in their official and individual
> capacities, as well as Attorney's for DFPS, Court-
> appointed Ad-Liteum, Judges, and CASA, Attorney for the
> mother, and others.   These causes of action include:
> fraud on the Court, conspiracy/collusion, fraud by
> commission, fraud by omission, 42 USC 1983 Denial of
> Rights Under Color of Law, 5th Amendment, right to due
> process of law, ineffective assistance of counsel,
> obstruction of justice, abuse of discretion, and
> intentional infliction of emotional distress, as well as
> breach of fiduciary duty against the above-named
> defendant and seeks monetary (compensatory and punitive
> damages),[31] emergency injunctive and declaratory relief,
> and a restraining order on further acts from the Courts
> or the State to interfere with my custodial rights to my
> children.  [*sic*]

*Id.* at pp. 6-7.  Plaintiff further states that jurisdiction for her
claim for damages against the State of Texas arises under the Texas
Tort Claims Act.   *Id.* at p. 12.   She also requests a federal and
Congressional investigation into her complaints.   She seeks two

---

[31] Plaintiff seeks compensatory damages in excess of $2
million, punitive damages "in such amounts as justice requires,"
mental anguish damages, and an award of costs and attorney's fees,
even though she is proceeding *pro se*.

million dollars in damages, punitive damages, and declaratory and injunctive relief. #1 at pp. 62, 69-71.

Plaintiff states that she and Steve Shipula were married on April 7, 2001 and divorced on April 30, 2008, although they stopped living together around March 2006. Plaintiff was designated Primary Managing Conservator with no geographical restrictions in the mediated divorce settlement. She claims that the children had minimal contact with Steve Shipula from March 2006, and she maintains that she took good care of the children.

Plaintiff alleges that DS and ES, ages seven and four years, respectively, were seized and placed into foster care by CPS on March 26, 2009 pursuant to an Emergency Order of Protection sought by the Texas Department of Family Protective Services and CPS Caseworker Ieshia Webb and signed by Judge John Phillips, and she has had no contact with them since. That emergency order was continued by Judge Jo Ottis after the case was transferred to Montgomery County for a show cause hearing on May 18, 2009. A status hearing was held in East Texas CPS Cluster Court on June 22, 2009. Plaintiff was denied access to her children, despite completing every request made by CPS and attending every single supervised visit for the next eighteen months. Although Plaintiff had offered her stepsister as a relative placement when the children were removed, CPS did not do a home study. Furthermore Plaintiff states that pursuant to an order signed by Judge Ottis on

August 18, 2009, on August 21, 2009 the children were placed in their father's home after on eighteen-month investigation following the children's report that the father had sexual contact with both in February 2008.  She sought modification of the custody order for months thereafter and complains of mistreatment and continued re-settings of hearings involving numerous individuals in a conspiracy to deprive her of joint custody rights.  She claims that they ignored or refused to investigate allegations of sexual contact in the father's home and manufactured false accusations and evidence of abuse or neglect and accusations about her mental health.  She has been denied access to her children since March 26, 2009.

## II.  Standards of Review

### A.  Federal Rule of Civil Procedure 12(b)(1)

"When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Randall D. Wolcott, MD, PA v. Sebelius*, ___ F.3d ___, No. 10-10290, 2011 WL 870724, *4 (5th Cir. Mar. 15, 2011), *citing Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).  Fed. R. Civ. P. 12(h)(3).

Rule 12(b)(1) allows a party to move for dismissal of an action for lack of subject matter jurisdiction.  Federal courts are courts of limited jurisdiction; absent jurisdiction conferred by statute or the Constitution, they lack the power to adjudicate

claims.  *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994).  Federal courts have subject matter jurisdiction where there is diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs, or where there is a question of federal law involved.  28 U.S.C. §§ 1332 and 1331.  Subject matter jurisdiction cannot be established by waiver or consent.  *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 919 (5th Cir.), *cert. denied*, 534 U.S. 993 (2001).  If subject matter jurisdiction is lacking, the court must dismiss the suit.  *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998).

The party asserting that subject matter exists, here Plaintiff, must bear the burden of proof for a 12(b)(1) motion. *Ramming*, 281 F.3d at 161.

In reviewing a motion under 12(b)(1) the court may consider (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.  *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981).  All uncontroverted allegations in the complaint must be accepted as true.  *Id.* at 412.  Unlike review under Rule 12(b)(6), under Rule 12(b)(1) the court may consider disputed facts as well as undisputed facts in the record.  *Id.*

A motion to dismiss for lack of subject matter jurisdiction

under Rule 12(b)(1) is characterized as either a "facial" attack, i.e., the allegations in the complaint are insufficient to invoke federal jurisdiction, or as a "factual" attack, i.e., the facts in the complaint supporting subject matter jurisdiction are questioned. *In re Blue Water Endeavors, LLC,* Bankr. No. 08-10466, Adv. No. 10-1015, 2011 WL 52525, *3 (E.D. Tex. Jan. 6, 2011), *citing Rodriguez v. Texas Comm'n of Arts*, 992 F. Supp. 876, 878-79 (N.D. Tex. 1998), *aff'd*, 199 F.3d 199 (5th Cir. 2000). A facial attack happens when a defendant files a Rule 12(b)(1) motion without accompanying evidence. *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). In a facial attack, allegations in the complaint are taken as true. *Blue Water*, 2011 WL 52525 at *3*, *citing Saraw Partnership v. United States*, 67 F.3d 567, 569 (5th Cir. 1995).

If it is a factual attack, the Court may consider any evidence (affidavits, testimony, documents, etc.) submitted by the parties that is relevant to the issue of jurisdiction. *Id., citing Irwin v. Veterans Admin.*, 874 F.2d 1092, 1096 (5th Cir. 1989). A defendant making a factual attack on a complaint may provide supporting affidavits, testimony or other admissible evidence. *Patterson v. Weinberger*, 644 F.3d 521, 523 (5th Cir. 1981). The plaintiff, to satisfy its burden of proof, may also submit evidence to show by a preponderance of the evidence that subject matter jurisdiction exists. *Id*. The court's consideration of such

matters outside the pleadings does not convert the motion to one for summary judgment under Rule 56(c).  *Robinson*, 2008 WL 4692392 at *10, *citing Garcia*, 104 F.3d at 1261.  Here Plaintiff filed numerous documents as exhibits to her complaint that are referenced by the parties.  In resolving a factual attack on subject matter jurisdiction under Rule 12(b)(1), the district court, which does not address the merits of the suit,[32] has significant authority "'to weigh the evidence and satisfy itself as to the existence of its power to hear the case.'"  *Robinson v. Paulson*, No. H-06-4083, 2008 WL 4692392, *10 (S.D. Tex. Oct. 22, 2008), *quoting Garcia v. Copenhaver, Bell & Assocs.*, 104 F.3d 1256, 1261 (11th Cir. 1997), and *citing Clark v. Tarrant County*, 798 F.2d 736, 741 (5th Cir. 1986).

---

[32] As the court explained in *Taylor v. Dam*, 244 F. Supp. 2d 747, 753 (S.D. Tex. 2003),

It is well settled that "a district court has broader power to decide its own right to hear the case than it has when the merits of the case are reached." [*Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir.). *cert. denied*, 454 U.S. 897 (1981).] "Jurisdictional issues are for the court--not the jury--to decide, whether they hinge on legal or factual determinations. *Id*. To determine whether jurisdiction exists, the court will generally resolve any factual disputes from the pleadings and the affidavits submitted by the parties. *See Espinoza v. Missouri Pac. R.R. Co.*, 754 F.2d 1247, 1248 n.1 (5th Cir. 1985).  The court may also conduct an evidentiary hearing and "may hear conflicting written and oral evidence and decide for itself the factual issues which determine jurisdiction." *Williamson*, 645 F.2d at 413; *see Menchaca v. Chrysler Credit Corp.*,613 F.2d 507, 511-12 (5th Cir.), *cert. denied*, 449 U.S. 953 . . . (1980).

When a plaintiff lacks standing, the court lacks subject matter jurisdiction. *Cadle Co. v. Neubauer*, 562 F.3d 369, 371 (5th Cir. 2009). "[S]tanding is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defendants of Wildlife*, 504 U.S. 555, 560 (1992). The constitutional requirements to establish standing are (1) injury in fact that is concrete, particularized,[33] and actual or imminent, not hypothetical; (2) a fairly traceable causal link between the plaintiff's injury and the defendant's challenged actions; and the likelihood of redressibility by a the requested relief. *Lujan*, 504 U.S. at 560-61; *Little v. KPMG LLP*, 575 F.3d 533, 520 (5th Cir. 2009). Prudential concerns address (1) whether a plaintiff's grievance falls within the zone of interests protected by the statutory provision invoked in the suit; (2) whether the complaint raises abstract questions or a generalized grievance more properly addressed by the legislative branch; and (3) whether the plaintiff is asserting his own legal rights and interests rather than the legal rights and interests of third parties. *St. Paul Fire & Marine Ins. Co. v. Labuzan*, 579 F.3d 533, 539 (5th Cir. 2009)(quotations and citations omitted).

---

[33] In other words, the plaintiff must have a "personal stake" in the controversy and the injury must be particular as to him and not one simply suffered by citizens at large. *Raines v. Byrd*, 521 U.S. 818-19 (1997).

The Eleventh Amendment[34] and sovereign immunity also restrict federal court jurisdiction.  *Vogt v. Board of Commissioners of the Orleans Levee Dist.*, 294 F.2d 684, 688 (5ᵗʰ Cir.), *cert. denied*, 537 U.S. 1088 (2002).  "The Eleventh Amendment bars an individual from suing a state in federal court unless the state consents or Congress has clearly and validly abrogated the state's sovereign immunity."  *Fairley v. Louisiana State*, 254 Fed. Appx. 275, 276–77 (5ᵗʰ Cir. Sept. 11, 2007), *citing* U.S. Const. amend. XI, and *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1999).[35]  A suit against a state agency or department is

---

[34] The Eleventh Amendment provides, "The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  While the Amendment does not expressly mention suits against the State by its own citizens, the United States Supreme Court has "consistently held that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as citizens of another State."  *Edelman v. Jordan*, 415 U.S. 651, 662–63 (1974).  Moreover, even if the State is not named as a party in the suit, the action may be barred by the Eleventh Amendment, as when the action is essentially one for recovery of money from the state treasury.  *Id.; Ford Motor Co. v. Dep't of Treasury*, 323 U.S. 459, 464 (1945).  While a rule has developed that the Eleventh Amendment bars suits by private parties seeking to impose liability that must be paid from public funds in the state treasury, the "jurisdictional bar applies regardless of the nature of the relief sought."  *Id.; Pennhurst State School*, 465 U.S. at 100.

[35] As the Texas Supreme Court, in addressing sovereign immunity, distinguishes immunity from suit and immunity from liability:

> Immunity from liability and immunity from suit are two distinct principles.  Immunity from liability protects the state from judgment even if the Legislature

considered to be a suit against the state under the Eleventh Amendment.  *Id.*  In addition, the Eleventh Amendment bars suit against a state official when "'the state is the real substantial party in interest.'"  *Id.*, *citing Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984).  Furthermore, neither the states, nor state agencies, nor state officials sued in their official capacity are amenable to suit under 42 U.S.C. § 1983 because they are not "persons" within the meaning of that statute. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989).

Dismissal of a case for lack of subject matter jurisdiction is

---

has expressly consented to suit.  *Federal Sign v. Texas S. Univ.*, 951 S.W. 2d 401, 405 (Tex. 1997); *see Missouri Pac. R.R. Co. v. Brownsville Navigation Dist.*, 453 S.W. 2d 812, 813 (Tex. 1970).  Like other affirmative defenses, it must be pleaded or else it is waived. [*Davis v. City of San Antonio*, 752 S.W. 2d 518, 519-20 (Tex. 1988)]; *see* TEX. R. CIV. P. 94.  Immunity from liability does not affect a court's jurisdiction to hear a case.  *See Davis*, 752 S.W. 2d at 520.
    In contrast, immunity from suit bars an action against the state unless the state expressly consents to the suit.  *Federal Sign*, 951 S.W. 2d at 405; *Missouri Pac.*, 453 S.W. 2d at 814.  The party suing the governmental entity must establish the state's consent, which may be alleged either by reference to a statute or to express legislative permission.  *See Missouri Pac.*, 453 S.W. 2d at 814 . . . .  Since as early as 1847, the law in Texas has been that absent the state's consent to suit, a trial court lacks subject matter jurisdiction. *See Federal Sign*, 951 S.W. 2d at 403 . . . .

*See also Texas Dep't of Parks and Wildlife v. Miranda*, 133 S.W. 3d 217, 224 (Tex. 2004)("Sovereign immunity includes two distinct principles, immunity from suit and immunity from liability. Immunity from liability is an affirmative defense, while immunity from suit deprives a court of subject matter jurisdiction.")(citations omitted).

not a determination on the merits and does not bar the plaintiff from pursuing a claim in a court that does have proper jurisdiction.  *Ramming*, 281 F.3d at 161.

## B.  Federal Rule of Civil Procedure 12(b)(6)

When a district court reviews a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), it must construe the complaint in favor of the plaintiff and take all well-pleaded facts as true. *Randall D. Wolcott, MD, PA v. Sebelius*, ___ F.3d ___, No. 10-10290, 2011 WL 870724, *4 (5th Cir. Mar. 15, 2011), *citing Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007)(citations omitted).  "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 1965, *citing* 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, pp. 235-236 (3d ed. 2004)("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action").  "*Twombly* jettisoned the minimum notice pleading requirement of *Conley v. Gibson*, 355 U.S. 41 . . .

(1957)["a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"], and instead required that a complaint allege enough facts to state a claim that is plausible on its face." *St. Germain v. Howard*, 556 F.3d 261, 263 n.2 (5th Cir. 2009), *citing In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)("To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"), *citing Twombly*, 127 S. Ct. at 1974). *See also Alpert v. Riley*, No. H-04-CV-3774, 2008 WL 304742, *14 (S.D. Tex. Jan. 31, 2008). "'A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Montoya v. FedEx Ground Package System, Inc.*, ____ F.3d ____, No. Civ. A. L-08-39, 2010 WL 3081504, * 3 (5th Cir. Aug. 9, 2010), *quoting Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1940 (2009). Dismissal is appropriate when the plaintiff fails to allege "'enough facts to state a claim to relief that is plausible on its face'" and therefore fails to "'raise a right to relief above the speculative level.'" *Montoya*, 2010 WL 3081504 at * 3, *quoting Twombly*, 550 U.S. at 555, 570.

Furthermore, the plaintiff must plead specific facts, not merely conclusory allegations, to avoid dismissal. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000)

"Dismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief . . . ." *Rios v. City of Del Rio, Texas*, 444 F.3d 417, 421 (5th Cir. 2006), *cert. denied*, 549 U.S. 825 (2006).

As noted, on a Rule 12(b)(6) review, although generally the court may not look beyond the pleadings, the Court may examine the complaint, documents attached to the complaint, and documents attached to the motion to dismiss to which the complaint refers and which are central to the plaintiff's claim(s), as well as matters of public record. *Lone Star Fund V. (U.S.), L.P. v. Barclays Bank PLC,* 594 F.3d 383 (5th Cir. 2010), *citing Collins*, 224 F.3d at 498-99; *Cinel v. Connick*, 15 F.3d 1338, 1341, 1343 n.6 (5th Cir. 1994). Therefore the Court has not considered those submitted by either party that fall outside this restriction. If an exhibit attached to the complaint contradicts an allegation in the complaint the exhibit controls. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 377 (5th Cir. 2004).

The district court is to construe liberally the briefs of *pro se* litigants and apply less stringent standards to them than to parties represented by counsel. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)(reciting the long-established rule that documents filed pro se are to be liberally construed and "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers"); *Andrade v. Gonzales*, 459 F.3d 538,

543 (5th Cir. 2006); *Grant v. Cuellar*, 59 F.3d 523, 524 (5th Cir. 1995).

Fraud claims must also satisfy the heightened pleading standard set out in Federal Rule of Civil Procedure 9(b): "In allegations alleging fraud . . ., a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  A dismissal for failure to plead with particularity as required by this rule is treated the same as a Rule 12(b)(6) dismissal for failure to state a claim.  *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996).  The Fifth Circuit interprets Rule 9(b) to require "specificity as to the statements (or omissions) considered to be fraudulent, the speaker, when and why the statements were made, and an explanation of why they were fraudulent."  *Plotkin v. IP Axess, Inc.,* 407 F.3d 690, 696 (5th Cir. 2005).

The pleading standards of *Twombly* and Rule 9(b) apply to pleading a state law claim of conspiracy to commit fraud.  *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 193 (5th Cir. 2009)("a plaintiff alleging a conspiracy to commit fraud must 'plead with particularity the conspiracy as well as the overt acts . . . taken in furtherance of the conspiracy'"), *quoting FC Inv. Group LLC v. IFX Markets, Ltd.*, 529 F.3d 1087, 1097 (D.C. Cir. 2008).

If Plaintiffs fail to state a claim for fraud underlying their

civil conspiracy claim, the civil conspiracy claim must be dismissed, too. *Allstate Ins. Co. v. Receivable Finance, Inc.,* 501 F.3d 398, 414 (5th Cir. 2007); *American Tobacco Co., Inc. v. Grinnell*, 951 S.W. 2d 420, 438 (Tex. 1997)("Allegations of conspiracy are not actionable absent an underlying [tort]"); *Krames v. Bohannon Holman LLC*, No. 3:06-CV-2370-0, 2009 WL 762205, *10 (N.D. Tex. Mar. 24, 2009).

The court may also take notice of matters of public record when considering a Rule 12(b)(6) motion. *Davis v. Bayless*, 70 F.3d 367, 372 n.3 (5th Cir. 1995); *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994).

Dismissal under Federal Rule of Civil Procedure 12(b)(6) is "appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001), *cert. denied sub nom. Cloud v. United States*, 536 U.S. 960 (2002), *cited for that proposition in Baisden v. I'm Ready Productions*, No. Civ. A. H-08-0451, 2008 WL 2118170, *2 (S.D. Tex. Tex. May 16, 2008). *See also ASARCO LLC v. Americas Min. Corp.*, 382 B.R. 49, 57 (S.D. Tex. 2007)("Dismissal "'can be based either on a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" [citation omitted]), *reconsidered in other part*, 396 B.R. 278 (S.D. Tex. 2008).

When a plaintiff's complaint fails to state a claim, the court

should generally give the plaintiff at least one chance to amend the complaint under Rule 15(a) before dismissing the action with prejudice.  *Great Plains Trust Co v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002)("District courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal."); *United States ex rel. Adrian v. Regents of the Univ. of Cal.*, 363 F.3d 398, 403 (5th Cir. 2004)("Leave to amend should be freely given, and outright refusal to grant leave to amend without a justification . . . is considered an abuse of discretion. [citations omitted]").  The court should deny leave to amend if it determines that "the proposed change clearly is frivolous or advances a claim or defense that is legally insufficient on its fact . . . ."  6 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Proc.* § 1487 (2d ed. 1990).

### III.  Pending Motions

Because Plaintiff's responses do not address the legal issues raised by Defendants and Plaintiff does not understand the legal principles involved, the Court does not summarize them.

**A.  Defendants State of Texas, Texas Department of Family and Protective Services, and CPS Defendants' (collectively, "Texas State Entity Defendants'") motion to dismiss (#8) under Federal**

**Rules of Civil Procedure 12(b)(1) and (6).**

Noting that Plaintiff has been and is currently a party in state court litigation involving custody of her children and challenges the orders issued in those proceedings, the Texas State Entity Defendants argue that this action must be dismissed against them for seven reasons:  (1) the *Rooker-Feldman* Doctrine bars this suit; (2) the *Younger* Abstention Doctrine bars this suit; (3) the State of Texas, TDFPS, and the CPS Defendants have Immunity under the Eleventh Amendment; (4) the State of Texas, TDFPS, and the CPS Defendants have Sovereign Immunity; (5) the CPS Defendants have Qualified Immunity; (6) Plaintiff lacks standing for an Obstruction of Justice claim; and (7) Plaintiff fails to state a claim upon which relief may be granted.

The Court properly first addresses the Rule 12(b)(1), lack-of-subject-matter-jurisdiction challenges, particularly the *Rooker-Feldman* and *Younger* Abstention Doctrines.

1. *Rooker-Feldman Doctrine*

The Texas State Entity Defendants argue that the *Rooker-Feldman* Doctrine,[36] which bars a federal court from entertaining collateral attacks on state court judgments, *United States v.*

---

[36] *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415 (1923)(the jurisdiction of the District Court "is strictly original"); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 476 & 482 (1983)("a United States District Court has no authority to review final judgments of a state court in judicial proceedings").

*Shepherd*, 23 F.3d 923, 924 (5th Cir. 1994), precludes the Court's exercise of jurisdiction over this action.[37]  "If the district court is confronted with issues that are 'inextricably intertwined with a state judgment, the court is 'in essence being called upon to review the state-court decision,' and the originality of district court jurisdiction precludes such a review." *Id.*, *citing Feldman*, 460 U.S. at 482.   Here Plaintiff's claims arise directly from judicial rulings in state court proceedings, which she collaterally attacks, as evidenced by her complaint and the numerous state court orders attached to it, and she also challenges the hearings in state court and the evidence presented at those hearings.[38]

---

[37] Numerous Defendants point out that a letter to Plaintiff from the Civil Rights Division of the U.S. Department of Justice, attached to Plaintiff's complaint, #1-11, Ex. 13, p. 16, informed Plaintiff that her appropriate remedy was to pursue her claims through the state appellate process, yet Plaintiff filed the instant action in federal court.

[38] The Court agrees that Plaintiff asks this Court to review the following matters in this litigation, including the state court records, #1 at 64 [*sic*]:

> That this court considers this an emergency case and take actions to protect the minor children by taking over jurisdiction and review all previous court hearings, transcripts, pleadings, motions, pictures, CD, video, judges notes, all evidence submitted or not submitted to any party, all supporting documents of any kind legal or not legal, any and all information that is in the best interest of the minor children's health and welfare, all medical documents pertaining to the minor children, all audio calls made to the Texas children's Hotline and all Police Reports/Calls to the Residence at 16061 Stoltje Dr. Conroe, TX 77306 and 3418 Candlewisp Dr. Spring, TX 77388 relating to Alexandra Shipula and her ex-husband since 2003 both in Montgomery and Harris County.

The Court concludes that Texas State Defendants' conclusory assertion that the *Rooker-Feldman* Doctrine applies here fails to address the specific requirements of the doctrine as applied to the facts alleged in Plaintiff's complaint.  Plaintiff's allegations indicate that her state court proceedings are ongoing and that there is no final judgment.  The Fifth Circuit interprets the *Rooker-Feldman* Doctrine in the wake of *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)(holding that the doctrine bars "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commence and inviting district court review and rejection of those judgments.") as requiring a "final state court judgment" for which it improperly seeks appellate review in federal district court.  *Del-Ray Battery Co. v. Douglas Battery Company*, ___ F.3d ___, No. 10-40515, 2011 WL 855800, *3 (5th Cir. Mar. 2011).  In *Del-Ray Battery*, the panel declared, "We have previously held that 'the *Rooker Feldman* bar generally should not extend to state decisions that would not be given preclusive effect under doctrines of res judicata and collateral estoppel." *Id., quoting Ingalls v. Erlewine)*, 349 F.3d 205, 210 (5th Cir. 2003), and *citing Union Planters Bank Nat'l Ass'n v. Salih*, 369 F.3d 457, 460-61 (5th Cir. 2004).  In Texas res judicata requires a "prior *final* determination on the merits [emphasis added by panel in *Del-Ray Battery*]" *Id.* at *4, *citing Travelers Ins. Co. v. Joachim*, 315

S.W. 3d 860, 862 (Tex, 2010).   The appellate court in *Del-Ray* concluded that the partial summary judgment orders before it were not final judgments and therefore would not have res judicata effect and thus the *Rooker-Feldman* doctrine did not bar their review.   *Id.*

In the event that some of the state court rulings were final before this action was initiated,[39] that Plaintiff had lost in those state court rulings, that those rulings injured her, and that she attempted in essence to appeal those ruling here, this District Court would not have jurisdiction under the *Rooker-Feldman* doctrine because it lacks the authority to "reverse or modify" a state court judgment because the jurisdiction it has under 28 U.S.C. § 1257 is "strictly original"; only the United State Supreme Court has appellate jurisdiction over state-court judgments.   *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923).   Where federal constitutional claims are "inextricably intertwined" with the challenged state-court judgment, the federal court lacks jurisdiction over such constitutional claims because "the district court in essence being called upon to review the state-court decision."   *Id.* at 483-84.   Subsequent to issuing *Rooker*, the Supreme Court "confined" application of the *Rooker-Feldman* doctrine

---

[39] Two procedural requirements for application of the doctrine are that the federal suit must be initiated after the final state court judgment is rendered and the parties in both suits must be the same.   *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, (2005).

to bar a federal suit only if the federal plaintiff complains of injury from the state-court judgment rendered before the federal action is commenced and only if the plaintiff seeks federal-court review and rejection of that state-court judgment. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284, 291-92 (2005). It appears that this action was filed before any such judgment. Therefore the Court concludes that the *Rooker-Feldman* Doctrine does not apply here.

*2. Younger Abstention Doctrine*

The Texas State Defendants argue that this action is barred by the Abstention Doctrine of *Younger v. Harris*, 401 U.S. 37 (1971)(holding that a federal court must abstain from enjoining a state criminal proceeding). In *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982), the Supreme Court applied *Younger* to "non-criminal judicial proceedings when important state interests are involved."

The Fifth Circuit has concluded that *Younger* and *Middlesex* required a federal district court to abstain where (1) the dispute involves an "ongoing state judicial proceeding," (2) an important state interest in the subject matter of the proceeding must be implicated, and (3) the state proceedings must afford an adequate opportunity to raise constitutional challenges to overcome the presumption in favor of abstention. *Wightman v. Texas Supreme Court*, 84 F.3d 188, 189 (5th Cir. 1996). Here, they insist, a

-28-

*Younger* abstention is proper under these criteria.  Satisfying the first prong of the test, Plaintiff makes repeated judicial admissions that there are ongoing state judicial proceedings regarding the custody of her children and asks this Court to dismiss a state court suit "to modify the divorce decree," references a state court date on October 2010, and mentions an ongoing case in CCL3 Court.  Under the second prong, family and child custody are important state interests as a matter of law. *Moore v. Sims*, 442 U.S. 415, 434 (1979); *Ex Parte Burrus*, 136 U.S. 586, 593-94 (1890).   Furthermore application of the *Younger* Abstention Doctrine to domestic relations cases is obvious and proper.   *Crouch v. Crouch*, 566 F.2d 486, 487 (5th Cir. 1978); *Jagiella v. Jagiella*, 647 F.2d 561, 564 (5th Cir. 1981).  For the final prong, Plaintiffs must show that they had no opportunity to litigate the federal issue in state court.  *DeSpain v. Johnston*, 731 F.2d 1171, 1178 (5th Cir. 1984).  Defendants cite authority for the proposition that as a matter of law, "Texas law is apparently as accommodating as the federal forum. . . . [A]bstention is appropriate unless state law clearly bars the interposition of the constitutional claims."  *Moore*, 442 U.S. at 425-26.  Because all the elements for abstention are met, Defendants are entitled to a dismissal of this lawsuit in its entirety under Rule 12(b)(1).

The Court agrees with Defendants' summary of the law under *Younger v. Harris* and its application to the claims against the

Texas State Entity Defendants.   The Court finds that all the elements for *Younger* abstention are satisfied here and therefore the suit against the Texas State Defendants should be dismissed without prejudice.   This dispute involves an "ongoing state judicial proceeding."   This abstention doctrine, which counsels "federal court abstention when there is a pending state proceeding, reflects a strong policy against federal intervention in the state judicial processes in the absence of great and immediate irreparable injury to the federal plaintiff." *Moore v. Simms*, 442 U.S. at 423.   In the context of a *Younger* abstention, family relations, child custody and child welfare are important state interests.   *Moore v. Simms*, 442 U.S. at 435 ("[F]amily relations are a traditional area of state concern.").   As for the adequacy of state court proceedings, "[m]inimal respect for the state processes, of course, precludes any presumption that the state courts will not safeguard federal constitutional rights." *Middlesex County Ethics Committee v. Garden State Bar Assoc.*, 457 U.S. 423, 431 (1982).   A federal courts "should assume that state court procedures will afford an adequate remedy in the absence of unambiguous authority to the contrary." *Pennzoil Co. v. Texaco, Inc.*, 4381 U.S. 1, 15 (1987).   Plaintiff here has not alleged any facts showing that she was barred from raising her constitutional

concerns in the state court proceedings.[40]

This Court further points out that under *Younger v. Harris*, 401 U.S. 37, "federal courts must refrain from considering requests for injunctive or declaratory relief based on constitutional challenges to ongoing state civil proceedings." *Price v. Porter*, 351 Fed. Appx. 925, 927 (5th Cir. 2009), *citing Bauer v. Texas*, 341 F.3d 352, 357 (5th Cir. 1992).  Thus any of Plaintiff's claims for injunctive or declaratory relief with regard to ongoing litigation in the state court is precluded by the *Younger* abstention doctrine.

C. *Eleventh Amendment Immunity*

A state is immune under the Eleventh Amendment from any action brought against it in federal court by its own citizens or by citizens of other states.  *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984).  The immunity extends to arms or agencies of the state.  *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977).  The Fifth Circuit has held that CPS is an arm of the state under the Eleventh Amendment and 42 U.S.C. § 1983.  *Stem v. Ahearn*, 908 F.2d 1, 4-5 (5th Cir. 1990), *citing Russell v. Texas Dep't of Human Res.*, 746 S.W. 2d

---

[40] The Court notes that in *Exxon Mobil*, 544 U.S. at 292, citing *Younger v. Harris* as an example, the Supreme Court made clear that where properly invoked concurrent jurisdiction exists in federal and state court that is not barred by *Rooker-Feldman*, "Comity or abstention doctrines may, in various circumstances, permit or require the federal court to stay or dismiss the federal action in favor of the state-court litigation."  Here the Court concludes that dismissal is required by the *Younger* Abstention Doctrine.

510, 513-14 (Tex. App.--Texarkana 1988, writ denied), and *Austin v. Hale*, 711 S.W. 2d 64, 66-67 (Tex. App.--Waco 1986, no writ)(same). Texas State Entity Defendants are immune here under the Eleventh Amendment.

Thus the Court dismisses Plaintiff's claims against the Texas State Entity Defendants without prejudice pursuant to *Younger v. Harris* and the Eleventh Amendment.

**B.   Defendants the State of Texas, Texas Department of Family Protective Services, Rebecca Cunio, Orlando Velez, Chrystal Reid-Sophus, Ieshia Webb, Deanna Lowery-Green, Tara Grace, Leisha Fisher, Brian Bartko, Scott Dixon, Jose Martinez, Katie Olse, John Landis, Tonnis Hilliard, Diana Sutton, Vanessa Gistand, Ivy Chambers, Ann Heiligenstein, Judge Joseph Ann Ottis, and Senator Jane Nelson's amended opposed motion to stay discovery (#13)**

Movant Defendants request the Court to stay all discovery with respect to Defendant Texas until the Court resolves all pending questions of jurisdiction and immunity from suit.

Because the Court vacated the docket control schedule until it could reach the numerous motions to dismiss previously filed in this suit raising jurisdictional and immunity issues and because the Court is ruling on all the motions to dismiss in this opinion and order, this motion is moot. Moreover, Plaintiff has not filed any opposition to the motion, so under Local Rule 7.4 the Court construes that silence as a representation of no opposition.

**C. Defendant Judge Ottis's motion to dismiss (#9)**

Plaintiff has alleged that Judge Ottis abused her discretion in issuing orders in the state court litigation because the evidence presented in hearings was insufficient as a matter of law and the testimony offered was inaccurate.[41]  Plaintiff complains that her Fifth Amendment right to due process and her Sixth Amendment right to a speedy trial even though she paid for one were violated.[42]  Title 42 U.S.C. § 1983 is the appropriate vehicle for Plaintiff to assert these constitutional claims.

Judge Joseph Ann Ottis, sued in both her official and individual capacities, moves to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  Specifically she argues

---

[41] The complaint charges that Judge Otis's "rulings were unfounded" and that she along with County Attorney Scharlene Overstreet and Plaintiff's attorney, Amy N. Lacy, "obstructed justice by forcing Plaintiff to wait more than the full twelve months for side to be heard . . . "  #1 at 37.

[42] The Court notes that a Sixth Amendment right to a speedy trial applies to criminal proceedings only and fails to state a cognizable claim in Plaintiff's civil actions.  *See, e.g.,U.S. v. Perez-Perez*, 337 F.3d 990, 995 (8th Cir. 2003)("'[T]he Sixth Amendment right to a speedy trial attaches at the time of arrest or indictment, whichever comes first, and continues until trial commences,' and no Sixth Amendment right to a speedy trial arises until charges are pending.")(citing *U.S. V. Sprouts*, 282 F.3d 1037, 1042 (8th Cir. 2002), *cert. denied*, 540 U.S. 927 (2003); *U.S. v. Ballard*, 779 F.2d 287, 293 (5th Cir. 1986)(Sixth Amendment right to a speedy trial applies only to post-indictment delay).
Even if the Sixth Amendment right applied to civil proceedings, Judge Ottis points out that Plaintiff judicially admits in her complaint that Judge Ottis held trials on Plaintiff's state court actions in February 2010 and March and April 2010."  #1 at 66.

for dismissal based upon the *Rooker-Feldman* Doctrine[43]; the *Younger* Abstention Doctrine; immunity under the Eleventh Amendment and Sovereign Immunity; Judicial Immunity; Qualified Immunity; Plaintiff's lack of standing for an obstruction of justice claim; and failure to state a claim for which relief may be granted. Again the Court examines and resolves the motion on 12(b)(1) grounds, specifically the *Rooker-Feldman* doctrine, the *Younger* abstention doctrine, and judicial immunity under the Eleventh Amendment and sovereign immunity. The Court finds that the motion can be resolved as a matter of law on these issues and that reaching the other bases for dismissal is unnecessary.

As noted earlier, it is unclear whether there was a final decision in state court, issued before the federal suit was filed, as Plaintiff repeatedly alleges that there are ongoing state judicial proceedings regarding the custody of her children for application of the *Rooker-Feldman* doctrine. If the state court proceedings had ended, and if this suit was filed after that final ruling, this action would be precluded by *Rooker-Feldman*.

The Court finds the *Younger* Abstention Doctrine applicable to bar this federal action for the same reasons as the Texas State Entity Defendants' motion was granted.

---

[43] Judge Ottis states that among the orders collaterally attacked by Plaintiff and attached to her complaint are two issued by Judge Ottis. The Court has been able to locate only one. #1, Ex. 10 ("Order on Joint Motion for Placement of Child in the Home of the Father").

Moreover Judge Ottis is entitled to absolute judicial immunity from suit for acts undertaken in her judicial capacity even if they are done maliciously or corruptly.[44]  *Price v. Porter*, 351 Fed. Appx. 925, 927 (5th Cir. 2009), *citing  Mireles v. Waco*, 502 U.S. 9, 10 (1991), and *Stump v. Sparkman*, 435 U.S. 349, 355-57 (1978). The two exceptions to this doctrine, i.e., actions by the judge in a nonjudicial role and actions, while judicial actions, taken in complete absence of jurisdiction, do not apply here as Plaintiff has not alleged facts that would invoke either.  *Id.*  Her complaints against Judge Ottis relate to scheduling and conducting hearings and entering orders.  As a Texas judge, Judge Ottis is entitled to Eleventh Amendment and sovereign immunity for claims against her in her official capacity.  *Holloway v. Walker*, 765 F.2d 517, 519 (5th Cir.), *cert. denied*, 474 U.S. 1037 (1985).  Absolute judicial immunity does not bar prospective relief against a judge, but Plaintiff has not sought such relief against Judge Ottis. *Bauer  v.  State  of  Texas*, 341 F.3d 352, 357 (5th Cir. 2003). Plaintiff's claims that Judge Ottis violated her rights to due process are barred by judicial immunity.  *Bauer*, 341 F.3d at 357, *citing Hafer v. Melo*, 502 U.S. 21, 31 (1991).

The Fifth Circuit has held that the Texas Tort Claims Act does

---

[44] While Congress abrogated the Eleventh Amendment immunity of some executive officers in some circumstances under 42 U.S.C. § 1983 pursuant to § 5 of the Fourteenth Amendment, it did not do so as to judges.  *Price*, 351 Fed. Appx. at 927.

not waive Eleventh Amendment immunity in federal court. *Walker v. Livingston*, 381 Fed. Appx. 477, 479 (5th Cir. June 17, 2010), *citing Sherwinski v. Peterson*, 98 F.3d 849, 851-52 (5th Cir. 1996)(relying on language in the Tort Claims Act that requires claims to be brought in state court).

Accordingly, the Court concludes that Judge Ottis's motion to dismiss without prejudice pursuant to Fed. R. Civ. 12(b)(1) should be granted based on the *Younger* abstention doctrine, judicial immunity, and the Eleventh Amendment and sovereign immunity.

**D.   Defendant Senator Jane Nelson's Motion to Dismiss (#10)**

Plaintiff sues Senator Nelson in her official capacity on vague allegations, not particularized as to Nelson, that (1) Plaintiff's due process right under the Fifth Amendment and right to a speedy trial under the federal Constitution were violated and (2) for state law torts.  Plaintiff's allegation that she emailed Senator Nelson as Chair of the Health and Human Services Committee in July 2009, October 2009, and February 2010 and called her office in Washington D.C. "to present documents that clearly indicated my children were inappropriately removed, that they were well cared for and Plaintiff had complied with every request made by CPS/DFPS in Spite of the fact that no report had been made against me that initiated this retaliatory witch hunt against me and that CPS has been harassing me like I am their number one priority since Feb. 2008. [*sic*]" as a matter of law fails to state a cognizable claim

against Senator Nelson.   #1 at 26.

Senator Nelson moves for dismissal based on several grounds: the *Rooker-Feldman* doctrine; the *Younger* abstention doctrine; the Eleventh Amendment and Sovereign Immunity; Legislative Immunity; Qualified Immunity; lack of standing for an Obstruction of Justice claim; and failure to state a claim upon which relief may be granted.

As indicated *supra*, because it is unclear whether the state court proceedings are complete and the judgments final, and because Plaintiff alleges those actions are ongoing, the Court finds the *Rooker-Feldman* doctrine inapplicable.

For same reasons indicated earlier, the Court finds dismissal appropriate under the *Younger* abstention doctrine.

Senator Nelson also has immunity from suit for damages in her official capacity under the Eleventh Amendment and Sovereign Immunity.   Moreover Senator Nelson correctly points out that sovereign immunity is not waived for § 1983 claims (should Plaintiff mean to sue her in her individual capacity). *Aguilar v. Texas Dep't of Crim. Justice, Institutional Div.*, 160 F.3d 1052, 1054 (5th Cir. 1998); *City of Lancaster v. Chambers*, 883 S.W. 2d 650, 658 (Tex. 1994).  Nor is it waived for claims precluded by the Texas Tort Claims Act,[45] such as the intentional torts asserted here

---

[45] The Court notes that the Texas Tort Claims Act's express waiver of sovereign immunity is limited to three areas, not relevant here:  use of publicly owned automobiles, premises

(fraud, breach of fiduciary duty, intentional infliction of emotional distress, and conspiracy). *Sanders v. City of Grapevine*, 218 S.W.3d 772, 779 (Tex. App.--Fort Worth 2007, pet. denied)(fraud); *City of Corpus Christi v. Bayfront Assocs.*, 814 S.W. 2d 98 (Tex. App.--Corpus Christi 1991, writ denied)(breach of fiduciary duty); *Gillum v. City of Kerrville*, 3 F.3d 117, 123 (5th Cir. 1993)(intentional infliction of emotional distress); *Firestone Steel Products Co. v. Barajas*, 927 S.W. 2d 608, 614 (Tex. 1996)(civil conspiracy); *Murray v. Earle*, 405 F.3d 294, n.56 (5th Cir. 2005)(civil conspiracy).

Senator Nelson is further protected by absolute legislative immunity for any legislative actions she has performed, although the Court finds that Plaintiff has not challenged any legislative acts by this Defendant. Under Texas law, "'individual acting in a legislative capacity are immune from liability for those actions.'" *Weingarten Realty Investors v. Silvia*, 376 Fed. Appx. 408, 410 (5th Cir. Apr. 27, 2010), *citing Joe v. Two Thirty Nine Joint Venture*, 145 S.W. 3d 150, 157 (Tex. 2004). A defendant's legislative actions are protected if they reflect "'a discretionary, policymaking decision of general application, rather than an individualized decision based upon particular facts.'" *Id.*, *citing In re Perry*, 60 S.W. 3d 857, 860 (Tex. 2001).

---

defects, and injuries arising out of conditions or use of property. *Texas Dep't of Parks and Wildlife v. Miranda*, 133 S.W. 3d 217, 225 (Tex. 2004).

For all these reasons the Court concludes that Senator Nelson's motion to dismiss should be granted.

**E.  Defendant Robin D. McKinney's motion to dismiss (#14)**

Robin D. McKinney is sued for damages in her official capacity in the Ombudsman's Office of the Texas Health and Human Services Commission with Plaintiff judicially admitting that McKinney is a state official,[46] but Plaintiff fails to allege any specific claim against McKinney.  Indeed the complaint mentions her name only twice: in listing the parties to the lawsuit and #1 at p. 23, ¶ 25, which states,

> Defendant Robin McKinney, of the Texas Health and Human Services Ombudsmen's off ice, is the contact for another Agency a consumer can contact when DFPS violates their own provisions, and purposes, or when bad faith, mal-intent, abuse of authority is involved.  Robin McKinney is a resident of Texas and at times material herein. Robin McKinney is a resident of Texas and at all times material herein.  Robin McKinney is sued in her official capacity for not enforcing the purpose of CPS, and allowing individuals to use their positions to destroy innocent people's lives.  Robin McKinney is sued in her official capacity. [*sic*]

As with Senator Nelson, Plaintiff generally asserts violations of her Fifth Amendment right to due process and her Sixth Amendment right to a speedy trial of the United States Constitution, under 42 U.S.C. § 1983, and state law torts of fraud, breach of fiduciary duty, intentional infliction of emotional distress.

McKinney moves for dismissal of the claims against her based

---

[46] #1 at p. 23.

on the following grounds:     *Rooker-Feldman* Doctrine; *Younger*
Abstention Doctrine; Eleventh Amendment and Sovereign Immunity;
Plaintiff's lack of standing for an Obstruction of Justice Claim;
and failure to state a claim upon which relief may be granted.

For the same reasons stated above, the Court agrees with
McKinney that the claims against McKinney should be dismissed based
on *Younger* and Eleventh Amendment and Sovereign Immunity.

**F.    Defendant Tom Wallace's motion to dismiss (#16)**

Tom Wallace, the Assistant Harris County Attorney who
allegedly "took over the Show Cause Hearing" and "failed and
refused to act in the minor children's best interests and knowingly
allowed falsehoods to be promulgated before the Court," #1 at 18,
moves for dismissal based on the *Rooker-Feldman* Doctrine and the
*Younger* Abstention Doctrine, as well as a prosecutor's absolute
immunity from suit for acts done in his professional capacity.

For reasons stated, the Court does not apply the *Rooker-
Feldman* Doctrine under the circumstances here, but agrees with
Wallace that Plaintiff's claims should be dismissed under *Younger*,
as previously discussed.

The Court further agrees that Wallace is entitled to absolute
prosecutorial immunity for Plaintiff's claims against him in his
individual capacity.   Prosecutors have absolute immunity from
liability in suits filed pursuant to 42 U.S.C. § 1983 for actions
taken within the scope of their jurisdiction as prosecutors.

*Imbler v. Pachtman*, 424 U.S. 409, 427 (1976).  *See also Buckley v. Fitzsimmons*, 509 U.S. 259, 272-73 (1992)(a prosecutor is absolutely immune in a civil rights lawsuit for any action taken in connection with a judicial proceeding even when the prosecutor acts maliciously, wantonly, or negligently); *Boyd v. Biggers*, 31 F.3d 279, 285 (5th Cir. 1994)(Prosecutorial immunity applies to the actions of a prosecutor in initiating the prosecution and carrying the case through the judicial process).  This immunity protects both chief prosecutors and their assistants who perform prosecutorial functions.  *Imbler* 424 U.S. at 412, 422 (deputy district attorney).  The allegations against Wallace relate to acts within the scope of his role as a prosecutor.  Moreover a prosecutor cannot be liable for alleged conspiracy where he is otherwise entitled to absolute immunity for his underlying actions. *Mobray v. Cameron County, Tex.*, 274 F.3d 269, 277 (5th Cir. 2001).

For claims against a prosecutor in his official capacity under § 1983, the principles for determining whether a local government entity should be held liable apply:

> [P]laintiff must initially allege than an official policy or custom "was a cause in fact of the deprivation of rights inflicted."   To satisfy the cause in fact requirement, a plaintiff must allege that the custom or policy served as the moving force behind the [constitutional] violation at issue, . . . or that [his] injuries resulted from the execution of an official policy or custom.  The description of a policy or custom and its relationship to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts."

*Spiller v. City of Texas City, Police Department*, 130 F.3d 162, 167 (5th Cir. 1997)(citations omitted); *Burge v. Parish of St. Tammany*, 187 F.3d 352, 470 (5th Cir. 1999).  Plaintiff has made no such allegations here.

Accordingly the Court concludes that Wallace's motion should be granted based on the *Younger* Abstention Doctrine and prosecutorial immunity.

**G.  Defendant Joseph P. Cannon's motion to dismiss (#17)**

Joseph P. Cannon, who proceeds here *pro se* and who served as attorney for Steve Shipula in the state court proceedings, moves for dismissal on the grounds of *Rooker-Feldman* Doctrine, *Younger* Abstention Doctrine, Plaintiff's lack of standing for an Obstruction of Justice claim, and failure to state a claim upon which relief may be granted.

For the same reasons explained above, the Court grants the motion based on *Younger*.

**H.   Defendant Theresa Burbank's motion to dismiss (#22) and motion for more definite statement (#23)**

Theresa Burbank, identified by Plaintiff as a licensed therapist appointed by TDFPS to evaluate DS and ES, allegedly colluded with Elizabeth Payte, Wanda Smith, Judge Jo Ottis, Scharlene Overstreet, Leeann Hill, made false statements under oath, and on February 10, 2010 stated that "CPS's position is that these girls don't exist." #1 at 29. Apparently the same general

claims (violations of her Fifth Amendment right to due process and Sixth amendment right to speedy trial under 2 U.S.C. § 1983, and state-law tort claims are asserted against Burbank.

Burbank moves for dismissal based on the *Rooker-Feldman* Doctrine, the *Younger* Abstention Doctrine, lack of standing for an Obstruction of Justice claim, and failure to state a claim upon which relief may be granted.

Again the Court grants Burbank's motion to dismiss under *Younger*. Accordingly the Court finds her motion for more definite statement is moot.

**I.   Defendant Victor Love's[47] motion to dismiss (#24) and amended motion for more definite statement (#26)**

Plaintiff asserts that Victor Love is a therapist appointed for Plaintiff and Steve Shipula by DFPS. Without alleging any specific claims against Love, Plaintiff complains that "Defendants listed were under government contract and violated state and federal laws by bringing fraud upon the court, perverting the course of justice and violating the civil rights and Parental Rights of the Plaintiff. Love also cites to general assertions in Plaintiff's complaint, #1 at 54-55 [*sic*]: "Defendants individually

---

[47] According to the complaint, Victor M. Love was the therapist appointed for Plaintiff and Steve Shipula by DFPS. Love purportedly colluded with Elizabeth Payte, Wanda Smith, Judge Jo Ottis, Scharlene Overstreet, and Steve Shipula's attorney Leaanne Hill "to maliciously and intentionally make false statements under oath." #1 at 28.

and acting in concert with one another conspired to deprive plaintiff of the joint custody rights she had with her minor children. Further the Defendants did act alone and in concert to deprive D.S. and E.S. of their right to be in their home (without interference from the STATE) and custody of their mother . . . ." Moreover, they "[m]anufactured, or coerced, or invention of false evidence of abuse and or neglect or potential for same by nebulous accusations concerning my mental health by CPS, and Defendant Steve Shipula, against Plaintiff, A.S., in a retaliatory effort to deprive me of my lawful custody rights and to deprive D.S., E.S. of the love and comfort and protection of her lawful mother. [*sic*]" Moreover, Plaintiff claims, "Defendants individually, collectively and all under color of authority, did use their positions to manufacture false accusations against Plaintiff A. Shipula to the end that she should be deprived of her superior right of possession to minor children, and subsequently, that deprivation was used by Father in his Motion to Modify proceeding which have resulted in plaintiff having extremely limited contact with her very young children for over eighteen months with no relief or remedy from the Court." Plaintiff contends that Love also colluded with Elizabeth Payte, Wanda Smith, Judge Jo Ottis, Scharlene Overstreet, and Steve Shipula's attorney Leaanne Hill "to maliciously and intentionally make false statements under oath." #1 at 28. Among others the complaint claims that Love "made malicious accusations against

-44-

Plaintiff's mental health" and "concealed evidence, i.e., conclusions in the DFPS closed case files regarding the Father," and made character assassinations against Plaintiff.  #1 at pp. 33, 36.

Love's motion states that he provided individual counseling to Plaintiff and her husband as part of TDFPS's service plan after the removal of Plaintiff's minor children from her custody.  He provided outpatient counseling services to Plaintiff from June 19, 2009 until she terminated those services on August 29, 2009.  #1, Ex. 21.  He moves for dismissal of claims against him in his official and individual capacity on the following grounds: *Rooker-Feldman* Doctrine; *Younger* Abstention Doctrine; bar to constitutional claims because Love is not a state actor; immunity under Texas Family Code § 261.106 or the common law absolute immunity available to witnesses who testify in judicial proceedings; and failure to state a claim for relief under 42 U.S.C. § 1983 or pendent state-law claims.

For reasons cited above, the Court concludes that *Younger* abstention bars this Court from exercising jurisdiction over the claims against Love.  Thus his amended motion for more definite statement is moot.

**J.  Defendant Amy Ngo Lacy's motion to dismiss under Rule 12(b)(1) and 12(b)(6)(#27)**

Lacy states that she was Plaintiff's attorney.  Plaintiff's

complaints against Lacy are based on two cases in Texas state courts.  In the first, Lacy successfully obtained the dismissal of a TDFPS complaint against Plaintiff in state court.[48]  The second case arises from Steve Shipula's attempt to modify the child custody order in Plaintiff's divorce, in which Plaintiff is challenging orders entered by state court judges and seeks to have this Court exercise jurisdiction over the state court proceedings and award her custody of the minor children.[49]  Lacy asserts that "the clear purpose" of this action is "to get the federal courts to do what the state courts have not done thus far--return Plaintiff's children to her."  #27 at p.2.

---

[48] Lacy explains that on March 17, 2009, Plaintiff left her children unattended in her car when she went into a Wal-Mart, #1-1 at p. 6.  On March 26, 2009 TDFPS took her children pursuant to a court order for emergency protection of the children.  #1-1 at p. 7.  TDFPS filed suit ("case 1") in Harris County, but the case was transferred to Montgomery County Court at Law No. 3, Cause No. 09-05-4334-CV, because Plaintiff's divorce, which determined child custody, was filed there.  The children meanwhile were placed in foster care while this first case was pending.  A motion was subsequently filed in case 1 to place the children with Steve Shipula and it was granted.  #1 at p. 15; Ex. 11.  On March 29, 2010 the Department nonsuited the case without prejudice.  #1-1 at p. 11; Ex. 15.

[49] This second case ("case 2") was Plaintiff's divorce case (Cause No. 06-03-2370-CV, in which on January 28, 2010, Steve Shipula filed a motion to modify the custody order in their divorce while case 1 was pending.  #1 at p. 51; Ex. 16.  On March 31, 2010, after the Department dismissed Case 1, Lacy informed Plaintiff that she could pick up the children.  Steve Shipula allowed her to see them for thirty minutes, but would not permit her to take them away.  The next day a restraining order was entered in case 2 to prevent Plaintiff from taking the children.  #1 at p.52; Ex. 17.  Case 2 was still pending at the time Lacy filed her motion to dismiss.  Nevertheless Plaintiff filed the instant federal action.

Plaintiff alleges that her attorney, Amy N. Lacy conspired with others to keep her children from her. Specifically Plaintiff claims that Lacy (1) conspired with others to mock the judicial system (#1 at p. 8); (2) "did not defend me or use her legal knowledge to obtain a jury trial on my behalf," even though Plaintiff paid her over $130,000 over a seven-month period (#1 at 28); (3) obstructed justice by forcing Plaintiff to wait more than a year for a jury trial (#1 at p. 37); (4) objected to the transfer of case 1 to Montgomery County (#1 at 7); and (5) requested that both parents undergo drug tests (#1 at 52).

Lacy moves for dismissal of the claims against her for inadequate pleading under Rule 12(b)(6), the *Rooker-Feldmen* Doctrine, and the *Younger* Abstention Doctrine.[50]

For reasons indicated above, the Court grants Lacy's motion based on the *Younger* Abstention Doctrine.

## K. Defendant Leeann Hill's motion to dismiss (#48)

Leeann Hill, attorney for Steve Shipula, is sued in her official and individual capacities. Plaintiff's general claims of Fourth Amendment right against seizure of her children, Fifth

---

[50] Lacy also argues that the domestic relations exception under *Ankenbrandt v. Richards*, 504 U.S. 689,703 (1992), but that doctrine is an exception to diversity jurisdiction, which is not alleged to and clearly does not exist here. *Smith v. Tisdale*, Civ. a. No. 3:09-CV-1165-D, 2009 WL 3163541, *4 and n.6( N.D. Tex. Sept. 30, 2009)("The domestic relations exception *per se* applies only to actions in diversity."), *citing Flood v. Braatan*, 727 F.2d 303, 307 (11th Cir. 1984).

Amendment right to due process, and Sixth Amendment right to a speedy trial appear to apply to Defendants generally. Plaintiff also asserts that Hill conspired with the agents of the court and DFPS to commit fraud on the court to ask that testimony in the CPS Cluster Court and County Court at Law 3 be allowed without requiring the witness to take an oath. #1 at 29.

Hill moves for dismissal of the claims against her based on the *Rooker-Feldman* Doctrine, *Younger* Abstention Doctrine, Plaintiff's lack of standing to assert an Obstruction of Justice claim, and failure to state a claim upon which relief may be granted.

For reasons indicated above, the Court concludes that the claims against Hill are jurisdictionally barred by *Younger*.

## L. Defendant Elizabeth Payte's motion to dismiss (#49)

Elizabeth Payte was appointed by Judge Ottis to serve as Guardian Ad Litem, representing DS and ES, in the lawsuit by DFPS to terminate Plaintiff's and Steven Shipula's parental rights. Payte states that following months of hearings and testimony and interviews with the children and other parties, as guardian ad litem she recommended to the Court that the children be placed with their father, Steve Shipula. The Department did not seek termination of Plaintiff's parental rights because of its policy not to do so if the children are placed in a safe and protective environment. Payte states that the children were safe with Steve

Shipula and that protective guidelines were established to provide constant but supervised visits between Plaintiff and her children. After the Department finalized the placement of the children with their father, he filed a motion to modify the divorce decree, which was pending when Payte filed her motion here. At that time, Payte was removed as guardian ad litem. Payte further states that Plaintiff has had regular visits with her children, and that she and her attorney of record in the modification case agreed to temporary orders regarding the children that were adopted and signed by Judge Patrice McDonald. The modification issue has been set for a jury trial.

*Pro se*, Payte moves for dismissal of the claims against her based on the following grounds: *Rooker-Feldman* Doctrine; *Younger* Abstention Doctrine; immunity granted to guardians ad litem, attorneys ad litem, and amicus attorneys under Texas Family Code § 107.009[51]; Plaintiff's lack of standing for an Obstruction of

---

[51] Section 107.009 provides,

(a) A guardian ad litem, an attorney a litem, or an amicus attorney appointed under this chapter is not liable for civil damages arising from an action taken, a recommendation made, or an opinion given in the capacity of guardian ad litem, or amicus attorney.

(b) Subsection (a) does not apply to an action taken, a recommendation made, or an opinion given:

(1) with conscious indifference or reckless disregard to the safety of another;

(2) in bad faith or with malice; or

Justice claim; and failure to state a claim upon which relief may be granted.

For reasons stated previously, the Court concludes that this suit is jurisdictionally barred by *Younger*.

**M.  Defendant Wanda Smith's motion to dismiss (#50)**

Wanda Smith, identified in the complaint as a Montgomery County CASA Volunteer and case worker for Shipula's case, was allegedly "acting outside of her scope of employment where she was involved in perjury promulgated in court" (#1 at 27).   The complaint alleges she colluded with Love, Payte, Judge Ottis, Judge McDonald, Assistant Montgomery County Attorney Scharlene Overstreet, and LeeAnn Hill to "maliciously and intentionally make false statements under oath."   #1 at p. 28.   Finally it charges that Smith "did not investigate the criminal actions of collusion and conspiracy to defraud the Court and mislead the Criminal Investigation into whether Steven Shipula and his girlfriends (one of whom is connected with law enforcement) had sexual contact with DS and ES and had committed aggravated sexual assault on the mother.   Fraud on the Court by filing an Affidavit with gross misrepresentations, and outright lies and omissions to get the Order of Emergency Protection signed . . . . [*sic*]"  #1 at p. 32. (Smith states that CASA had not even been appointed at the time of emergency removal.   Smith maintains that she has no authority to

---

(3) that is grossly negligent or willfully wrongful.

place children; the Department has the exclusive right to do so with court approval.  Tex. Fam. Code § 262.114, 262.201(e), and 263.002-.003.   Plaintiff also asserts that Smith ignored exculpatory evidence and evaluations and collateral contacts that did not support CPS' accusations regarding Plaintiff's mental health.  #1 at pp. 58-59.   Although Plaintiff claims that Exhibit 20 supports her claim that Smith recommended to the judge not to allow Plaintiff to have contact with her children for over twelve months, Exhibit 20 does not do so, but instead articulates Smith's recommendation based on CASA's investigation that Plaintiff continue supervised visitation with the children.   Smith's recommendations on the child's best interest are only recommendations; CASA has no authority to determine visitation or the placement of a child.  Moreover Plaintiff, not Smith, raised the allegation of sexual contact against Steve Shipula; the allegation was fully investigated and ruled out by the Department in conjunction with law enforcement.  Smith's further investigation based on conversations with treatment providers for the parents and children only confirmed the lack of evidence to support Plaintiff's claims of sexual abuse of her minor children by their father.

Smith states that she was appointed by the court as guardian ad litem for D.S. and E.S. on June 8, 2009 and served with the volunteer advocate to fulfill the statutory duties of a guardian ad litem as established in § 107.002 of the Texas Family Code.  She

was dismissed on March 29, 2010 upon the order granting non-suit of the State's case.  In addition to the general claims against all the Defendants, the complaint asserts that Smith conspired with the courts, attorneys, and attorney ad litem to make a mockery of the court justice system to undermine her relationship with and access to her children and to intentionally inflict emotional distress on Plaintiff by separating and detaining her children.  #1 at pp. 8-9. Smith points out that a guardian ad litem has no authority to separate or detain children; only the State, acting through the department and/or law enforcement pursuant to approval from the court with jurisdiction over the minor children may do that.  Texas Family Code §§ 262.001, 26.104, 263.001, *et seq*.

Smith requests dismissal for lack of subject matter jurisdiction under Rule 12(b)(1) on the following grounds: Plaintiff lacks standing to seek injunctive or declaratory relief against Smith; Plaintiff lacks standing to bring a claim for criminal prosecution for obstruction of justice or other criminal allegations; the *Rooker-Feldman* Doctrine mandates dismissal; and the *Younger* Abstention Doctrine applies.

As discussed above, the Court finds that the *Younger* Abstention Doctrine applies to preclude its exercise of jurisdiction over this case, including the claims against Smith.

**N.  Plaintiff's  motion to dismiss motions to dismiss filed by the**

**CPS Defendants, Judge John Ottis, State of Texas and TDFPS (#78)[52]**

Repeating many of the same allegations against these Defendants, Plaintiff asks the Court to deny their motions to dismiss and be ordered to rethink their Disclosure of Interested Parties. Because the Court is reviewing all the motions for lack of subject matter jurisdiction, the Court denies the motion.

**O.   Defendants Scharlene Overstreet's[53] and David K. Walker's[54] motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and (6)(#80)**

Scharlene Overstreet and David Walker are, respectively, an Assistant Montgomery County Attorney and the elected County Attorney for the Texas Department of Family Protective Services in Montgomery County, Texas, sued in their individual and official capacities. Overstreet is one of two Assistant County Attorneys in

---

[52] This instrument is actually titled "PLAINTIFF'S DISPUTE of DEFENDANTS (TDFPS, CPS Defendants and State of Texas) and Defendant Hon Jo Ann Ottis' DISCLOSURE OF INTERESTED PARTIES filed on 11/23/2010. [*sic*]"

[53] Plaintiff alleges that Scharlene Overstreet was the Assistant Montgomery County Attorney for the Texas Department of Family Protective Services in Montgomery County, Texas. Overstreet was "involved in bias, overzealous and abusive perjury, excessive litigation promulgated in court to deprive me of my children." #1 at 19.

[54] Walker is identified in the Complaint as Montgomery County Attorney who personally authorized and manipulated the abuse of process by resetting the case and dropping Plaintiff's constitutional right to a jury trial, scheduled for a January 19, 2010 trial before Judge Jo Ottis. He allegedly "failed to act in the minor children's best interest and knowingly allowed falsehoods to be promulgated before the court," as well as instructed her husband to file a suit in family court before CPS moved to nonsuit. #1 at 19-20.

Walker's office who represent CPS, a division of TDFPS.  Overstreet and Walker represented CPS in the suit filed by TDFPS[55] on March 25, 2009 against Plaintiff, which was transferred from Harris County to Montgomery County on April 16, 2009.

Walker and Overstreet move for dismissal on various grounds: the *Rooker-Feldman* Doctrine, failure to plead a cognizable claim against them in their official capacities by pleading a policy or custom of Montgomery County that caused Plaintiff's injuries, *Younger* Abstention Doctrine, prosecutorial immunity in their actions to remove the children from Plaintiff's custody and place them with their father, qualified immunity as government officials performing discretionary acts, lack of standing for Plaintiff's obstruction of justice claim, lack of standing for injunctive and declaratory relief, and sovereign immunity in their official capacity from intentional tort claims.

From the face of Plaintiff's complaint, which factually pleads claims against them only in their official capacities, Walker and Overstreet's motion for dismissal should be granted with prejudice because the *Younger* Abstention Doctrine applies here, as does absolute prosecutorial and sovereign immunity.

**P.   Federal Defendants' motion to dismiss** (#102)

---

[55]   The suit was a "suit affecting the parent-child relationship" ("SAPCR") under Texas Family Code Chapter 262, Subchapter B.  Walker and Overstreet became involved in the action after it was transferred from Harris County to Montgomery County.

Defendants the United States of America, United States Attorney General Eric Holder in his official capacity, the Department of Justice, the United States Attorney's Office, and Assistant Untied States Attorneys Daniel Hu and Keith Wyatt, in their official capacities, move for dismissal.

Daniel Hu and Keith Wyatt, who are sued in their official capacities, assert they are entitled to absolute immunity as government attorneys. Moreover they insist they had no involvement with Plaintiff's state-court case; divorce and custody matters are not handled by the United States Attorneys' office. Noting that a plaintiff may sue a federal official for damages for a constitutional violation in federal court not under § 1983, as Plaintiff here has alleged, but under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), nevertheless they assert that they are entitled to qualified immunity for any such claim.

Attorney General Eric Holder claims he is entitled to both absolute and qualified immunity. He points out that Plaintiff does not allege any facts that he personally violated any of her constitutional or statutory rights or that he was directly involved in her divorce and custody lawsuit. Moreover, he observes that Plaintiff appears to be suing him under a theory of respondeat superior, asserting that he is responsible for the alleged conduct of persons within the Texas State system who investigated

Plaintiff's complaints and for "other Studies, such as Nancy Schaeffer's 2005 <u>The Corrupt Business of Child Protective Services</u> and other complaints of wrongdoing by Child Protective Services in all States regarding of [*sic*] childrens' removal and placement." Holder points out that as a matter of law respondeat superior liability is not available in a *Bivens* action.  *Abate v. Southern Pacific Transp. Co.*, 993 F.2d 107, 110 (5th Cir. 1993).

In addition the Federal Defendants contend that because Plaintiff has not shown that Congress has waived the sovereign immunity of the United States and its agencies, the Department of Justice and the U.S. Attorney's Office, this Court lacks subject matter jurisdiction over the claims against them.  It is black letter law that there has been no waiver of sovereign immunity for constitutional torts. *FDIC v. Meyer*, 510 U.S. 471, 477-78 (1994); *Garcia v. United States*, 666 F.2d 960, 966 (5th Cir. 1982). Plaintiff's complaint asserts conclusory claims against these officials only in their official capacity; furthermore Plaintiff fails to allege facts demonstrating that they were in any way directly or personally involved in Plaintiff's divorce and child custody disputes.  The Supreme Court in *Bivens* did not authorize damages suits against the United States, its agencies, or its employees in their official capacities. *Interfirst Bank Dallas v. United States*, 769 F.2d 299, 309 (5th Cir. 1985).

Finally Defendants assert Plaintiff has not exhausted her

administrative remedies under the Federal Tort Claims Act ("FTCA") and thus any tort claim she has against the United States is barred. *McNeil v. United States*, 508 U.S. 106. 107 (1993); 28 U.S.C. § 2675(a)[56] and § 2401(b).[57] The FTCA is the exclusive means for recovery of money damages against the United States in tort, has a limited waiver of sovereign immunity, and imposes liability on the United States for personal injuries, death, or injuries to or loss of property caused by the negligent or wrongful act or omission of any  government employee while acting within the scope of his office or employment. *Ross v. Runyon*, 858 F. Supp. 630,

---

[56] Section 2675(a) provides,

An action shall not be instituted upon a claim against the United states for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.  The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section. . . .

[57] Section 2401(b) provides,

A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

634-35 (S.D. Tex. 1994); 28 U.S.C. § 2674.  Compliance with th

administrative claim process is a jurisdictional prerequisite to

filing a lawsuit under the FTCA.  *Ross*, 858 F. Supp. at 636.

Clearly Plaintiff's failure to exhaust remedies under the FTCA

would bar any claims that might fall within its limited

jurisdiction, though none appear to do so.

        The Court agrees with Defendants that under the allegations in

Plaintiff's complaint, Daniel Hu, Keith Wyatt, and Eric Holder are

entitled to absolute sovereign and prosecutorial immunity from

Plaintiff's suit.  Moreover it concludes that under the pleadings,

the Department of Justice and the U.S. Attorney's Office are

entitled to sovereign immunity against Plaintiff's claims.

**Q.  Defendant Steven Shipula's motion to dismiss (#118)**

        As in his attorney LeeAnne Hill's motion to dismiss, Steven

Shipula moves for dismissal of the claims against him on five

grounds: the *Rooker-Feldman* doctrine; the *Younger* Abstention

Doctrine; Plaintiff's lack of standing to sue Steven Shipula in

this court; Plaintiff's lack of standing for an obstruction of

justice claim; and Plaintiff's failure to state a claim for which

relief may be granted.

        For the same reasons stated above, the Court concludes it

lacks subject matter jurisdiction over the claims against Steven

Shipula under *Younger*.

**R.  Plaintiff's motion for summary judgment (#96)**

Because the Court abstains from exercising subject matter jurisdiction over this action, it moots Plaintiff's motion without prejudice to her reurging her claims in her state court proceedings.

**ORDER**

Accordingly, for the reasons indicated above, because this Court lacks subject matter jurisdiction, the Court

ORDERS the following:

1. Defendants State of Texas, Texas Department of Family and Protective Services ("TDFPS"), and CPS Defendants' motion to dismiss (instrument #8) is GRANTED without prejudice;

2. Defendants the State of Texas, Texas Department of Family Protective Services, Rebecca Cunio, Orlando Velez, Chrystal Reid-Sophus, Ieshia Webb, Deanna Lowery-Green, Tara Grace, Leisha Fisher, Brian Bartko, Scott Dixon, Jose Martinez, Katie Olse, John Landis, Tonnis Hilliard, Diana Sutton, Vanessa Gistand, Ivy Chambers, Ann Heiligenstein, Judge Joseph Ann Ottis, and Senator Jane Nelson's amended opposed motion to stay discovery (#13) is MOOT;

3. Defendant Judge Ottis's motion to dismiss (#9) is GRANTED with prejudice because not only does the Court not exercise jurisdiction under *Younger*, but because she

is entitled to absolute judicial immunity under the claims in Plaintiff's pleadings;

4.  Defendant Senator Jane Nelson's motion to dismiss (#10) is GRANTED with prejudice because not only does the Court not exercise jurisdiction under *Younger*, but because she is entitled to absolute legislative immunity under the claims in Plaintiff's complaint;

5.  Defendant Robin D. McKinney's motion to dismiss (#14) is GRANTED without prejudice;

6.  Defendant Tom Wallace's motion to dismiss (#16) is GRANTED with prejudice because in addition to abstention under *Younger*, he is entitled to absolute prosecutorial immunity against the claims pleaded in Plaintiff's complaint;

7.  Defendant Joseph P. Cannon's motion to dismiss (#17) is GRANTED without prejudice;

8.  Defendant Theresa Burbank's motion to dismiss (#22) is GRANTED without prejudice and her motion for more definite statement (#23) is MOOT;

9.  Defendant Victor Love's motion to dismiss (#24) is GRANTED without prejudice and his amended motion for more definite statement (#26) is MOOT;

10.  Defendant Amy Ngo Lacy's motion to dismiss under Rule 12(b)(1)(#27) is GRANTED without prejudice;

13.  Defendant Leeann Hill's motion to dismiss (#48) is

-60-

GRANTED without prejudice;

14.  Defendant Elizabeth Payte's motion to dismiss (#49) is GRANTED without prejudice;

15.  Defendant Wanda Smith's motion to dismiss (#50) is GRANTED without prejudice and her motion for more definite statement (#51) is MOOT;

16.  *Pro se* Plaintiff Alexandra Shipula's motion to dismiss motions to dismiss filed by the CPS Defendants, Judge John Ottis, State of Texas and TDFPS (#78) is DENIED;

17.  Defendants Scharlene Overstreet's[58] and David K. Walker's[59] motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1)(#80) is GRANTED with prejudice because in addition to a *Younger* abstention, they are entitled to prosecutorial immunity;

---

[58]  Plaintiff alleges that Scharlene Overstreet was the Assistant Montgomery County Attorney for the Texas Department of Family Protective Services in Montgomery County, Texas.  Overstreet was "involved in bias, overzealous and abusive perjury, excessive litigation promulgated in court to deprive me of my children." #1 at 19.

[59]  Walker is identified in the Complaint as Montgomery County Attorney who personally authorized and manipulated the abuse of process by resetting the case and dropping Plaintiff's constitutional right to a jury trial, scheduled for a January 19, 2010 trial before Judge Jo Ottis.  He allegedly "failed to act in the minor children's best interest and knowingly allowed falsehoods to be promulgated before the court," as well as instructed her husband to file a suit in family court before CPS moved to nonsuit. #1 at 19-20.

18.  Federal Defendants'[60] motion to dismiss (#102) is GRANTED with prejudice;

19.  Defendant Steven Shipula's motion to dismiss (#118) is GRANTED without prejudice;

20.   Because this Court lacks subject matter jurisdiction, Plaintiff's motion for summary judgment (#96) is mooted, without prejudice to its arguments being reurged in the state court proceedings.

Although Defendants Judge John F. Phillips, Associate Judge Aneeta Jamal, JoAnn Bohman (designated Agent of the United States Attorney's office, Southern District of Texas), Linda Bowen (same), Peggie Guillory (same), Marie Southern (same), and Gertrude Nelson (same) apparently have never been served and have not made an appearance, any claims against them would dismissed under judicial immunity, *Younger*, and/or sovereign immunity.  Accordingly the Court

ORDERS that this entire action is dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) and this case is

---

[60] The complaint charges Eric Holder of the United States Attorney's office with involvement "in the supervision and/or investigation of plaintiff's complaints . . . and other complaints of wrongdoing by Child Protective Services in all States regarding of [*sic*] children's removal and placement . . . ."  It further alleges that Daniel Hu and Keith Wyatt of the United States Attorney General's office as "involved in the supervision and/or investigation of plaintiff's complaints of her children's removal and placement.  STATE OF Texas is sued in its official capacity." #1 at 25.

CLOSED.

      **SIGNED** at Houston, Texas, this __17th__ day of __May__, 2011.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE